[Cite as *State v. Parker*, 2024-Ohio-1643.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| MARQUES PARKER, | : | Case No. CT2023-0036 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Muskingum County
Court of Common Pleas, Case No.
CR2023-0105


JUDGMENT:    Reversed and Remanded


DATE OF JUDGMENT:    April 29, 2024


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

RONALD L. WELCH                    HARRY R. REINHART
Prosecuting Attorney                    One Americana, Suite 301
Muskingum County, Ohio                    400 South Fifth Street
                                          Columbus, Ohio 43215

By: JOHN CONNOR DEVER
Assistant Prosecuting Attorney
Muskingum County, Ohio
27 North Fifth St., P.O. Box 189
Zanesville, Ohio 43702

*Baldwin, J.*

{¶1} The appellant appeals his sentence following a negotiated plea agreement.

**STATEMENT OF THE FACTS AND THE CASE**

{¶2} The appellant was indicted on February 9, 2023, on the following charges:

- Count One, Possession of a Fentanyl-Related Compound in violation of R.C. 2925.11(A) and (C)(11)(g), a felony of the first degree, with a major drug offender specification;

- Count Two, Trafficking in a Fentanyl-Related Compound in violation of R.C. 2925.03(A)(2) and (C)(9)(h), a felony of the first degree, with a major drug offender specification;

- Count Three, Illegal Manufacture of Drugs in violation of R.C. 2925.04(A) and (C)(2), a felony of the second degree, with a major drug offender specification;

- Count Four, Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs in violation of R.C. 2925.041(A) and (C), a felony of the third degree;

- Count Five, Possession of a Fentanyl-Related Compound in violation of R.C. 2925.11(A) and (C)(11)(c), a felony of the third degree, with a forfeiture specification;

- Count Six, Illegal Conveyance of Drugs of Abuse onto Grounds of a Specified Government Facility in violation of R.C. 2921.36(A)(2) and (G)(2), a felony of the third degree, with a forfeiture specification; and,

- Count Seven, Permitting Drug Use in violation of R.C. 2925.13(B) and (C)(3)(a), a felony of the fifth degree.

{¶3} The parties subsequently entered into a negotiated plea agreement in which the appellant agreed to plead no contest to the following two counts: Count Two as amended, Trafficking in a Fentanyl-Related Compound; and, Count Six, Illegal Conveyance of Drugs onto a Government Facility. Count Two is a first-degree felony carrying a mandatory prison term and a mandatory fine. Count Six is a third-degree felony carrying up to a thirty-six month prison sentence and a mandatory fine. Count Two originally carried a major drug offender specification; however, in exchange for the appellant's plea of no contest the appellee amended the Count Two Trafficking charge by dismissing the major drug offender specification. In addition, the appellee dismissed the remaining counts of the indictment.

{¶4} The parties agreed that there would be no recommendation of sentence, but that each party could present their arguments regarding sentencing to the trial court. In addition, the parties agreed that the amount of fentanyl was greater than 50 grams but less than 100 grams. Finally, the parties agreed that there were sufficient facts for a guilty finding. A signed plea form was executed by the parties, and submitted to the court.

{¶5} The trial court conducted a change of plea hearing on April 10, 2023. The trial court undertook to explain the mandatory sentence that the appellant would face, as well as the range of time that he could face depending on the indefinite maximum sentence. The court summarized the charges to which the appellant intended to plead no contest and, with regard to the appellant's potential sentence, stated:

BY THE COURT: Thank you Mr. Tabor.

Mr. Parker, you understand you are here today to plead guilty to two separate counts?

THE DEFENDANT: Yeah.

THE COURT: Count 2 now is amended. It's a charge of trafficking in a fentanyl-related compound, 50 to a hundred grams. It's charged as a felony of the first degree. It's subject to the Reagan Tokes Act.

Has Mr. Tabor gone over that with you?

THE DEFENDANT: Yes.

THE COURT: Non-life indefinite felony, which means there is a minimum stated prison term of 3 to 11 years in 1-year increments. A prison term is mandatory, so you will be sentenced somewhere between the 3 and 11 years. Maybe not between. It could be either one of those also inclusive. Once one of those terms is determined and you're sentenced to that, then the indefinite maximum becomes one and a half times whatever the sentence is.

**{¶6}** The appellant acknowledged his understanding and acknowledged that his plea was being entered voluntarily. The trial court went through the requisite Crim.R. 11 colloquy, and explained post release control. The appellant then entered his no contest plea.

**{¶7}** The appellee thereafter summarized the crimes at issue, stating that on January 24, 2023, police responded to a potential break-in on Shelby Street. They found a window open and saw people inside. The officers arrested the first person they came across. Others ran from the house in different directions. The officers cleared the

residence and saw a press, blender, digital scales, and a powdery residue. A warrant was obtained and a large amount of fentanyl was discovered in one of the bedrooms. On the table next to the drugs was the appellant's identification and a plane ticket in his name. When the appellant was subsequently arrested, close to $10,000 was found on his person. He was transported to the Zanesville City Jail and pills containing methamphetamine were discovered in his pocket. Defense counsel stipulated to those facts being sufficient for the court to find the appellant guilty.

{¶8} The trial court found the appellant guilty of both counts as amended and ordered a pre-sentence investigation.

{¶9} The trial court conducted a Sentencing Hearing on May 31, 2023. The appellee argued in favor of the maximum sentence of eleven years on Count Two, plus an additional three years on Count Six, for a total of fourteen years. The appellee argued that eleven years was the minimum to which the appellant could be sentenced, and referenced the harm that fentanyl had done to the community, as well as a letter from the appellant's mother submitted to the court.

{¶10} Defense counsel then submitted arguments regarding sentencing, and began by talking about the appellant and his family. He noted that people in the community loved and supported the appellant, and mentioned the mother's letter referenced by the prosecutor. The court interrupted to ask counsel if he had read the letter, at which time he acknowledged that he had not, but stated that he had spoken to the appellant's mother numerous times. Defense counsel submitted that the appellant had a drug problem, that the appellant had been through drug rehabilitation outside of prison, and requested the minimum sentence.

**{¶11}** The trial court then questioned the appellant. The appellant brought up his confusion about the plea and the mandatory sentence, stating that he believed that when the major drug offender specification was dropped from Count Two he was no longer subject to a mandatory sentence. Initially the trial court stated that the appellant's possible sentence was three to eleven years, plus a possible three on the conveyance count, but the prosecutor corrected the trial court, stating that the appellant was subject to a mandatory eleven year sentence, which was reflected in the plea agreement. Defense counsel stated that he discussed the plea with the appellant at the time of the change of plea hearing. The trial court asked the appellant if he understood, to which he replied "Somewhat."

**{¶12}** The trial court then asked the defendant a series of questions regarding his criminal history, brought up the letter from the appellant's mother, noted the court's receipt of the presentence investigation report, and went through the appellant's prior criminal history on the record. The appellant acknowledged violations of the post release control that he was on at the time of his arrest, and acknowledged that he failed to pay restitution or go to recovery as ordered in prior cases.

**{¶13}** The trial court sentenced the appellant to a mandatory minimum of eleven years to an indefinite term of sixteen and one half years. The sentence on the conveyance charge was thirty months, to run concurrently with the mandatory term. In addition, the trial court imposed the mandatory $10,000 fine. Finally, the court terminated post release control and imposed four years mandatory time consecutive to the sentence.

**{¶14}** The appellant filed a timely appeal, in which he sets forth the following two assignments of error:

{¶15} "I. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND THE CORRESPONDING SECTIONS OF THE OHIO CONSTITUTION WHEN TRIAL COUNSEL FAILED TO REVIEW A LETTER SUBMITTED TO THE COURT, FAILED TO REQUEST TIME TO REVIEW AND ADDRESS THE LETTER WHEN THE STATE AND THE COURT BROUGHT IT UP AT SENTENCING AND FAILED TO REQUEST A BRIEF CONTINUANCE TO VERIFY THAT THE APPELLANT HAD KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY ENTERED HIS PLEAS OF NO CONTEST."

{¶16} "II. THE TRIAL COURT ERRED IN FAILING TO ASSURE THAT APPELLANT'S PLEA OF NO CONTEST WAS KNOWING, INTELLIGENT AND VOLUNTARY WHEN THE COURT FAILED TO UNDERSTAND THE PLEA AGREEMENT AND MISREPRESENTED THE AGREEMENT TO APPELLANT IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS AND OHIO CRIMINAL RULE 11(C)."

### *Assignment of Error Number Two*

{¶17} We begin our analysis with assignment of error number two, in which the appellant argues that the trial court failed to comply with Crim.R. 11(C) because it failed to ensure that his no contest plea was knowing, intelligent, and voluntary.

### STANDARD OF REVIEW

{¶18} The Ohio Supreme Court addressed the application of Crim.R. 11(C) and a defendant's change of plea in the seminal case of *State v. Clark*, 119 Ohio St. 3d 239, 2008-Ohio-3748, 893 N.E.2d 462:

When a trial judge fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c), the guilty or no-contest plea is invalid "under a presumption that it was entered involuntarily and unknowingly." *Griggs,* 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 12; see also *Nero,* 56 Ohio St.3d at 107, 564 N.E.2d 474, citing *Boykin,* 395 U.S. at 242–243, 89 S.Ct. 1709, 23 L.Ed.2d 274. However, if the trial judge imperfectly explained nonconstitutional rights such as the right to be informed of the maximum possible penalty and the effect of the plea, a substantial-compliance rule applies. *Id.* Under this standard, a slight deviation from the text of the rule is permissible; so long as the totality of the circumstances indicates that "the defendant subjectively understands the implications of his plea and the rights he is waiving," the plea may be upheld. *Nero,* 56 Ohio St.3d at 108, 564 N.E.2d 474.

**{¶19}** *Id.* at ¶ 31. The appellant argues that the trial court erred when it incorrectly explained the maximum possible penalty he would receive in the event he changed his plea. Thus, the issue in this case is whether, under the totality of the circumstances, the appellant subjectively understood the implications of his no contest plea. We find that he did not.

## ANALYSIS

**{¶20}** The standard set forth in *Clark* was applied by this Court in *State v. Wallace,* 5th Dist. Licking No. 2010-CA-00008, 2010-Ohio-4297:

In the case at bar, the trial court informed appellant that if he was ever released from prison, he would be subject to mandatory post-release

control for five years. Furthermore, during the sentencing phase, the trial court informed appellant, that upon his release he would be placed on post-release control "for five years" and could be returned to prison upon a violation of those controls "for nine months, or for repeated violations, two and a half years." These statements are not correct. First, the trial court merged the counts of aggravated murder, murder and aggravated burglary for sentencing purposes. The trial court therefore sentenced appellant on only the aggravated murder and tampering with evidence, which was the third count in the indictment. Therefore, the five-year period of post release control that can be imposed for a felony of the first-degree, i.e. aggravated burglary, was incorrect because appellant cannot be separately sentenced for the aggravated burglary charge. Second, if released from prison appellant would be subject to parole and could be sent back to prison to serve the remainder of the original sentence.

Despite the failure to substantially comply with Crim.R. 11, the trial judge did not simply ignore his duties under Crim.R. 11(C)(2)(a). Because the trial judge partially complied with the rule, appellant must show that he was prejudiced by the trial court's misinformation to successfully vacate his plea. See *Nero,* 56 Ohio St.3d at 108, 564 N.E.2d 474.

In *Clark,* the court of appeals determined that the trial court erred in discussing post release control and that it provided a deficient explanation of the parole process. *State v. Clark,* Ashtabula App. No.2006–A–0004, 2007–Ohio–1780, 2007 WL 1113968, ¶ 15–19. However, it held that the

trial court substantially complied with the mandates of Crim.R. 11(C)(2)(a) because Clark was informed of the maximum prison sentence he faced. *Id.* at ¶ 26. It also discussed whether Clark had demonstrated that he was prejudiced by the trial court's errors and suggested that he had not. *Id.* at ¶ 28. The court of appeals affirmed the judgment of the trial court on this issue. It subsequently determined that its decision conflicted with a decision of the Twelfth District Court of Appeals, *State v. Prom,* 12th Dist. No. CA2002–01–007, 2003–Ohio–6543, 2003 WL 22887906, and certified the case as a conflict to the Ohio Supreme court.

The Supreme Court held, despite "the failure to substantially comply with Crim.R. 11, the trial judge did not simply ignore his duties under Crim.R. 11(C)(2)(a). Because the trial judge partially complied with the rule, Clark must show that he was prejudiced by the trial court's misinformation to successfully vacate his plea. See *Nero,* 56 Ohio St.3d at 108, 564 N.E.2d 474. Although it discussed prejudice in its opinion, the court of appeals did not reach a conclusion on the issue. We therefore remand the case for a full determination of prejudice." 119 Ohio St.3d at 247, 893 N.E.2d at 471 2008–Ohio–3740 at ¶ 40.

"The test for prejudice is 'whether the plea would have otherwise been made.' *Id.* Under the substantial-compliance standard, we review the totality of circumstances surrounding [the defendant's] plea and determine whether he subjectively understood [the effect of his plea]." See, *State v. Sarkozy,* 117 Ohio St.3d 86, 881 N.E.2d 1224, 2008–Ohio–509 at ¶ 19–20.

*Id.* at ¶¶26-30.

{¶21} The appellant argues that his right to be informed of the possible penalty he may receive if he pleaded no contest to the agreed upon charges was violated by the trial court's failure to comply with Crim.R. 11(C) because the court misinformed him of the possible mandatory minimum sentence. An offender's right to be informed of the potential penalties should he or she plead guilty or no contest is a non-constitutional right. Therefore, the trial court's actions need only substantially comply with Crim.R 11(C). Under the substantial-compliance standard, we review the totality of circumstances surrounding the appellant's no contest plea to determine whether he subjectively understood the effect of his plea.

{¶22} The trial court told the appellant that the minimum mandatory sentence for the crimes to which he pleaded no contest was three years. This was incorrect. However, despite a failure to substantially comply with Crim.R. 11, the trial court did not simply ignore his duties under Crim.R. 11(C)(2)(a). The trial court partially complied with the rule, and as such the appellant must show that he was prejudiced by the trial court's misinformation regarding the minimum mandatory sentence to which he was subjected as a result of his no contest plea. The test for prejudice is whether the appellant's plea would have otherwise been made.

{¶23} The appellant expressed his confusion regarding his possible sentence, and his lack of understanding of the effect of his plea, during the May 31, 2023 Sentencing Hearing:

> THE COURT: Is there anything you'd like to say on your behalf prior to sentencing?

THE DEFENDANT: I'm sorry for my crime. Sorry for my crime.

THE COURT: You're sorry for your conduct?

THE DEFENDANT: Sorry for my crime. But Your Honor, today - - when we went through my change of plea sentencing, I remember that it was suppose to - - it was - - that it was - - I thought the range for the F-1 was three to eleven, three to eleven was the range for the charge. I didn't know - -

THE COURT: It was three to eleven on the drug charge, and then the illegal conveyance goes up to three - - three years also.

MR. LITLE: Your Honor, it's actually just eleven on the drug charge due to the amount of fentanyl.

THE COURT: Mandatory eleven.

MR. LITLE: It's mandatory eleven. Fentanyl has two, from 50 to 100 grams is mandatory eleven and more than 100 is an additional potential eight.

THE COURT: Thank you. Go ahead.

THE DEFENDANT: And I thought the reason for that, I thought that the [major drug offender specification] was being dropped at sentencing. That meant that's what made it not mandatory time. That's what I signed on my plea agreement. It said the Count 1 and Count 5, that they would be - - at sentencing, they would drop the major drug offender specification.

**{¶24}** We find that, because the issue herein deals with whether the appellant was correctly informed as to his minimum mandatory sentence, the trial court need only have substantially complied with Crim.R. 11. However, the trial court's error during the Crim.R.

11(C) colloquy, in which it stated that the appellant was subject to a mandatory minimum of three years when in fact he was subject to a mandatory minimum of eleven years, did not substantially comply with Crim.R. 11 and, further, that the appellant was prejudiced by the error. Accordingly, we sustain appellant's assignment of error number two.

### *Assignment of Error Number One*

{¶25} Based upon our decision regarding assignment of error number two, we find assignment of error number one to be moot.

### CONCLUSION

{¶26} Based upon the foregoing, the decision of the Muskingum County Court of Common Pleas is hereby reversed and remanded for further proceedings consistent with this opinion.

By: Baldwin, J.

Gwin, P.J. and

Hoffman, J. concur.